Nov. Term, 1855.

THE AURORA AND LAUGHERY TURNPIKE Co. v. HOLTHOUSE.

---

The Aurora and Laughery Turnpike Company *v.* Holthouse and Another.

Statutes will be regarded as prospective, unless the intention to give them a retrospective operation is clearly expressed; and they will not then be treated as retrospective, if, by so construing them, they will divest vested rights.

The charter of a corporation constitutes a contract between the corporation and the state, and secures to the company a vested right in its franchise. This right is subject to any cause of forfeiture existing at the period of the enactment of the charter, but can not be divested by a subsequent enactment.

But it is competent for the legislature, at its pleasure, to alter the remedy for enforcing the forfeiture.

The mere failure of a corporation to pay a debt, was not, prior to the R. S. 1852, such a non-feasance as authorized proceedings by *quo warranto* or *scire facias* for its dissolution. Those remedies were only allowed where the corporation had misapplied the powers confided to it, or neglected to apply them toward the attainment of the purpose for which they were granted.

Nov. Term,
1855.

THE AURORA
AND LAUGH-
ERY TURN-
PIKE CO.
v.
HOLTHOUSE.

Tuesday,
November 27.

Corporations, before the R. S. 1852 took effect, were only subject to the reme-
dies for the non-payment of their debts, to which natural persons were.

The provisions of sections 16 and 17 of the "act establishing general princi-
ples respecting corporations," approved *June* 15, 1852, do not apply to cor-
porations which were in existence before it took effect.

That act took effect on the 6th day of *May*, 1853.

APPEAL from the *Dearborn* Circuit Court.

DAVISON, J.— The appellees, on the 21st of *October*,
1853, filed their complaint against the *Aurora and Laugh-
ery Turnpike Company.* This company was incorporated
by an act of the legislature, approved *February* 15, 1848,
with a view to the construction of a turnpike from the
city of *Aurora*, in *Dearborn* county, to a certain point on
*Laughery* creek, in *Ripley* county. On the 27th of *May*,
1851, the appellees recovered a judgment in the *Dearborn*
Circuit Court, against said company, for 165 dollars, with
costs, &c. This proceeding is founded on the 16th and
17th sections of an act approved *June* 15, 1852, which act
took effect on the 6th of *May*, 1853, and is entitled "an act
establishing general principles respecting corporations."
The above sections read thus:

"SEC. 16. Whenever any judgment against any corpo-
ration, other than banking, shall have remained unpaid for
the space of one year after the rendition thereof, and exe-
cution thereon is not stayed by appeal or *supersedeas*, the
Circuit Court of the proper county shall have power to
declare the franchise of such corporation forfeited, and
appoint a receiver, who shall give bond, and reduce the
assets of such corporation to possession, and pay the debts
thereof, under the same rules prescribed for the govern-
ment of administrators.

"SEC. 17. The services of such receiver shall be paid
by an allowance to be made by such Court, out of such
assets, and the surplus left after the payment of debts
and costs, shall be distributed among the stockholders *pro
rata.*" 1 R. S., p. 242.

The complaint sets forth the above judgment, and al-
leges that upon it a writ of *fieri facias* was issued, which,
on the 11th of *June*, 1852, was returned by the sheriff

"no goods or chattels, lands or tenements found whereon to levy," &c.  It is also alleged that said judgment is in full force and unpaid, and that execution thereon has not been stayed or superseded by appeal or otherwise, &c.

The prayer is that the franchise of the company may be forfeited, &c.

Nov. Term,
1855.

THE AURORA
AND LAUGH-
ERY TURN-
PIKE CO.
v.
HOLTHOUSE.

The Court having overruled a demurrer to the complaint, rendered judgment against said company, therein declared its franchise forfeited, and appointed a receiver, &c.

It is argued that section 16 is prospective; that it was intended to apply to corporations to be organized under the various acts passed at the same session of the legislature at which it was passed, and not to corporations created by special statute, and then in existence.

If this construction be correct, it decides the case against the appellees.  Statutes are to be considered prospective, unless the intention to give a retrospective operation is clearly expressed, and not even then, if, by such a construction, the act would divest vested rights. *Hastings* v. *Lane*, 3 Shep. R. 134.— *Torrey* v. *Corliss*, 33 Maine R. 333.—1 Blackf. 220.—1 Ind. R. 56.—2 *id.* 486.— *Medford* v. *Learned*, 16 Mass. R. 215.— Smith's Comm. 679.— *Garret* v. *Doe*, 1 Scam. 335.  Though the language of the enactment on which this suit is based, may be considered broad enough to include corporations already in existence, as well as those that should be afterwards made, still there are many cases in the books where general words, as comprehensive as those under consideration, have been restricted in their import, so as not to reach past transactions.  Indeed, there is nothing in the provision before us, that makes it clearly applicable to judgments against corporations in existence at the time of its passage.

Granting, however, that the enactment in question was intended to cover the present case, the inquiry then arises, whether it is not a law impairing the validity of contracts.  The charter of this company constituted a contract between her and the state.  It secured to the company a vested right in her franchise.  No doubt this right

Nov. Term,
1855.

THE AURORA
AND LAUGH-
ERY TURN-
PIKE Co.
v.
HOLTHOUSE.

was subject to any cause of forfeiture known to the law at the time of the act of incorporation, and up until the above act of 1852. Has the latter act imposed on the company a new cause of forfeiture, which did not exist prior to its passage? If it has, then its operation must be held prospective; otherwise it would be a retroactive infringement of a vested right, and therefore in conflict with the constitution.

But it is said, in argument, that "one of the duties of a corporation is to pay her debts, and if she does not, she is guilty of a non-feasance, and could, in the absence of the statutes of 1852, be proceeded against by an information in the nature of a *quo warranto* or a *scire facias*." If this position be correct, it follows that section 16 is a mere alteration of a previously existing law of the remedy, and not an invasion of any corporate right. The legislature have undoubted authority to alter the remedy, where such alteration does not impair the obligation of the contract. But we know of no authority, anterior to the act of 1852, in support of the position that the mere failure to pay a debt was such a non-feasance as would authorize proceedings against a corporation, either by *quo warranto* or *scire facias*. These remedies were allowable only in cases where a corporation had misapplied the powers intrusted to it, or neglected to apply them in the accomplishment of the purpose for which they were granted. *Angell* and *Ames* on Corporations, 742. Corporations are artificial persons, bound to pay their debts, but prior to the above act, they were subject to no remedies for non-payment, other than those applicable to natural persons. We are therefore of opinion that the sections above quoted must be held prospective in their operation.

If the enactment in question simply required the Court to appoint a receiver, with authority to reduce the assets of the corporation to his possession and subject them to the payment of its debts, a different construction might result. It would then relate to the remedy, and not invade chartered rights. Nor are we prepared to say that the act, as it stands, does not authorize the Court to entertain a

petition, properly framed, for the purpose just indicated. As to this, however, there being no such petition before us, we give no opinion. Our decision is, that the present decree declaring a forfeiture of the defendant's franchise, is erroneous, because it is unsustained by any law applicable to the facts presented by the record.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*W. S. Holman*, for the appellants.

*E. Dumont* and *O. B. Torbet*, for the appellees.