May Term,
1861.

MAYNES
v.
MOORE.

---

## MAYNES v. MOORE, and Another.

Where land is offered for sale by the Commissioners of the Sinking Fund, on a mortgage given to secure a loan from that fund, and is for a want of a cash bidder bought in by the State, and then reoffered and sold on credit, the mortgagor has no right of redemption.

The purchaser, if he immediately pays the amount demanded on the purchase, and gives the required security for the balance of the purchase money, can not be deprived of the benefit of his purchase, by the mere delay of the agent of the State to execute the formal certificate of purchase prescribed by the statute.

A party who seeks the interposition of the Courts *to avoid* a sale of lands, except perhaps in the case of tax sales, assumes the *onus* of showing that he is entitled to the relief asked.

The act of 1845, authorizing the Auditor of State, upon complaint filed by the purchaser, to issue his warrant to the sheriff of the proper county, directing him to put the purchaser in possession, does not impair the obligation of the contract, in the case of mortgages made before the passage of the act, but only provides a cumulative and more speedy remedy.

The law of 1831, regulating sinking fund sales, expressly authorizes a resale immediately after the land is bid in by the State, and provides for no redemption of the land, or reinstatement of the mortgage, by the original mortgagor ; and this statute was not repealed by the law of 1845.

The question as to the time of payment of the overplus bid by the purchaser, beyond the amount paid by the State, is between the State, or her officers, and the original mortgagor.

The issuing of the writ to put the purchaser in possession is a ministerial and not a judicial act, on the part of the Auditor of State ; and the judicial review of the sale must take place on an application to enjoin the execution of the writ.

Wednesday,
May 29.

APPEAL from the *Union* Circuit Court.

PERKINS, J.— A mortgage was executed to the State of *Indiana*, of which a copy, in substance, follows :

May Term, 1861.

MAYNES
v.
MOORE.

"This indenture, made this 15th day of *July*, A. D. 1837, between *John S. Hunt*, of the county of *Union*, *Indiana*, of the first part, and the State of *Indiana*, of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of $500, paid to him by the party of the second part, hereby mortgages to the party of the second part the following real estate, viz.: [here the property is described.] *Provided* always, nevertheless, that these presents are upon this express condition: that if the said *John S. Hunt* shall pay to the State of *Indiana*, at the branch at *Richmond* of the State Bank of *Indiana*, the sum of $500, with the interest in advance, annually, at the time and place stated in a certain bond made by the said *Hunt*, *July* 1, 1837; whereby said *Hunt* promised, under the penalty of $1,000, to pay to the Commissioners of the Sinking Fund of the State of *Indiana*, at the branch at *Richmond* of the State Bank of *Indiana*, in five years from the first of *July*, 1837, the sum of $500, with interest at 9 per cent., to be paid annually in advance on the first day of *July* in each year; and stipulated that in case of the non-payment of such amount of interest each year in advance, or any part of it, or of the principal, when due, then all equity of redemption is hereby released to the said State, by the said *Hunt;* and it shall be lawful for said State by her Commissioners of the Sinking Fund, or their agent or agents, after sixty days notice, forthwith to make sale of. the said premises at public auction, as authorised by law, for the principal or interest, or either of them, with 5 per cent. damages thereon, and costs, and to make and deliver to the purchaser a deed for the premises."

Afterward, *Hunt* sold and conveyed the land to *Maynes*, subject to the mortgage.

In 1842 the Legislature reduced the rate of interest on the mortgage to 7 per cent. *Maynes* paid the interest annually until 1858, when he failed to make the payment, and the commissioners sold the land mortgaged to *James Gavin*, who assigned his certificate of purchase to *Moore*, one of the defendants. *Moore* procured from the Auditor of State a writ as follows:

" *Indiana, to wit:    The Auditor of the State of Indiana
to the Sheriff of Union county, greeting:*

" Whereas, *Robert Moore* has this day filed his complaint, in writing, in the Auditor's office of the State of *Indiana*, verified by his oath, representing among other things, that on the 12th day of *December* 1858, at the city of *Indianapolis*, in the county of *Marion*, in said State, at a public sale held by the State of *Indiana*, through the Commissioners of the Sinking Fund, at the Court-house door in said city, pursuant to public notice published in the *Indiana State Sentinel*, a weekly newspaper printed and published in said city, sixty days immediately preceding the date aforesaid, one *James Gavin*, then and there, became the purchaser of the following described premises, [the same described in the mortgage,] for the sum of $625; the same having been before that time, mortgaged to the Sinking Fund by *John S. Hunt*, and bid in for the State for the failure of the mortgagor to pay the interest on a loan of $500, obtained by the said *Hunt* from the said fund.    And whereas, it was also shown that *Ebenezer Dumont*, as the President of the Commissioners of the Sinking Fund, on the day and year first above named, and by order of said board of commissioners, had issued and delivered to said *James Gavin* a certificate of purchase, under his official signature, stating that the said *James Gavin* had paid into the Sinking Fund office the sum of $43.75, being 7 per cent. interest on the said purchase for one year, in advance, and containing conditions for future payment of interest, and finally of principal, on which payment he was to be entitled to a conveyance from the State in fee.

" And, whereas, it was also shown that on the 25th day of *February* 1858, the said *James Gavin*, for value received, &c. [Here the assignment is fully set out to *Robert Moore*.]    And, whereas, it was also further shown that said *Robert Moore*, on the 18th day of *March*, 1859, and before the filing of said complaint, had duly notified said *William Maynes*, in writing, &c. [Here the notice and demand of possession are fully set forth.] You are, therefore commanded, in the name of the State of *Indiana*, and by virtue of the authority vested in me by the

laws of said State, that you remove the said *William Maynes* from the said real estate, within ten days from the receipt of this warrant, and put the said *Robert Moore* in possession of the same: and this you may in no wise omit, under the penalties prescribed by law.

Given under my hand and official seal, at *Indianapolis*, this 28th day of *March*, A. D., 1859.

JOHN W. DODD, <em>Auditor of State.</em>"

The seal of the State is attached to the writ. The certificate of sale to *Gavin* is in the record, and is correctly recited by the Auditor. To enjoin the execution of this warrant, was the object of this suit.

The complaint alleges:

1. That the property is worth $3000.

2. That the plaintiff is the owner, and in possession of it.

3. " That during the year 1858, the interest on the mortgage was sent by plaintiff, by a special messenger, to be paid to the President of the said Sinking Fund, for the purpose of paying said interest then due, viz.: $35; which, along with $5 to pay cost of advertisement, the officer having charge of said fund at *Indianapolis* refused to receive, alleging that the land mortgaged, as aforesaid, had been purchased by the State of *Indiana* and resold to one *James Gavin;*" "but," says the complaint, "no certificate of sale had then been delivered to said *Gavin*." The certificate was executed on *December* 12, 1858, as appears by its date.

4. " That he, plaintiff, has always been ready and willing to pay said interest and all costs appertaining thereto, and has offered the same, but neither the said *Moore,* nor the said Sinking Fund will receive the same."

A demurrer was sustained to the complaint, because it did not contain facts constituting a cause of action.

The points made in the brief of plaintiff are:

1. " That the law, at the date of forfeiture and sale, does not authorize such an extra judicial sale as the *one* made by the Sinking Fund Commissioner, as shown in the complaint, purports to be; and that it is doubtful whether any law is in force at all authorizing any other sale than a foreclosure by a Court of competent jurisdiction, under the Constitution."

May Term,
1861.

MAYNES
v.
MOORE.

May Term,
1861.

MAYNES
v.
MOORE.

2. " But if there was such a law, still the commissioner should have sold only so much of the land mortgaged as would have brought the amount of the loan and interest."

3. " That *Hunt's* mortgage was executed in 1837, when, although the board might sell the land to a *bona fide* purchaser, ·there was no law to authorize the State to buy it in. Nor was there any law authorizing the Auditor of State to issue his mandate, and *oust* the owner of the land of possession without either judge or jury, without inquiring whether the mortgagor was in default or not—in other words, to dispossess a man without being heard. This extraordinary power was given in 1845. See Statute of 1845, §§ 7 and 8, p. 19. To the granting of which appellant was no party, and not consenting thereto."

We examine these points in their order:

In 1834 an act was passed creating a State bank. This was under the old Constitution, which did not limit acts to a single subject; and the last ten sections of that bank act created and regulated the management of a sinking fund. They prescribed the securities on which the fund might be loaned; the mode of enforcing collections out of said securities; and that " In the examination of the title ·to real estate, fixing the value thereof, and the amount for which it is to be mortgaged; the amount of the loan; its duration and rate of interest; the nature of the mortgage; the registering, canceling, or foreclosing thereof; and in the making and collecting· any of said loans, with the interest thereon, the said board [the Board of Commissioners] shall be governed, in all respects, by the provisions of the several acts authorizing the loaning of the Seminary funds." R. S. 1838, § 115, p. 114.

The Seminary acts were passed prior to the bank act. R. S. 1831, pp. 495–499. And the provisions of them, touching loans and foreclosures, were, in legal effect, incorporated by reference into the part of the bank act regulating the Sinking Fund; and, hence, were continued in force, so far as they made a part of that act, and for the purposes of that act, by the Code of 1852, vol. 1, divisions 17 and 19, p. 431, which continues in force, " All acts relative to the Sinking Fund" and " All laws regulating the Sinking Fund."

The provisions of the Seminary act, then, so far as incorporated in the bank act, being in force for the purposes of Sinking Fund loans and sales, we inquire, In what manner do they authorize sales to be made?

On failure to pay the interest in advance, of any given year, they authorize, at a given time and place, on sixty days notice, an offer of sale of the land mortgaged, for cash down; and if no one bids the amount of the debt, damages and costs, they authorize the land to be bid in for the beneficiary of the fund, at the above mentioned sum, and then to be immediately reoffered for sale, on credit, and to be sold to a bidder who offers the amount of the debt, damages and costs. R. S. 1831, § 7 *et seq.*, p. 500. We find no provision for redemption. The mortgagor can prevent a sale of the property by paying the amount due at any time before sale. And after the sale and purchase by the State, he may bid it in at the second sale on credit; but after that has taken place, the purchaser, whoever he may be, if he immediately pays the amount demanded on the purchase, and gives the required security for the balance of the purchase money, can not be deprived of the benefit of his purchase, by the mere delay of the agent of the State to execute the formal certificate of purchase prescribed by the statute. See R. S. 1831, *supra;* *Pell* v. *Ulmar*, 18 N. Y. Rep. 139.

On the second point: viz., that the statute must be strictly pursued in making the sale, there can be no dispute about the principle; but how is the Court to know that it has not been conformed to in the sale made? If the purchaser at the sale was asking the aid of the Court to enforce rights under it, it might devolve upon him to show that a legal sale had taken place; but he is not asking the interposition of the Court; and we take it the rule is general, except perhaps in cases of tax sales, that a party who does ask such interposition in his favor assumes the *onus* of showing that he is entitled to it. The case of *Skelton* v. *Bliss*, 7 Ind. 77, is directly in point.

Turning now and examining the complaint, we do not find in it an allegation of a single departure from the requirements of the statutes in making the sale. The complaint amounts to nothing.

The following authorities are cited by counsel as to the effect of sales under statutes and powers: *Jackson* v. *Voorhis*, 9 Johns. 129; *Sherril* v. *Crosby*, 14 Johns. 358; *Denning* v. *Smith*, 3 Johns. Ch. R. 332; *Jackson* v. *Colden*, 4 Cowen, 266; *Bloom* v. *Rensselaer*, 15 Ill. 503; *Longwith* v. *Butler*, 3 Gilman, 32; *Jackson* v. *Bartlett*, 10 Johns. 185; *Jackson* v. *Rhodes*, 8 Cowen, 47; *Jackson* v. *Harris*, 3 Cowen, 241; *Wilson* v. *Troup*, 2 Cowen, 195; *Slee* v. *Manhattan*, 1 Paige, 52; *Burgen* v. *Bennett*, 1 Caine's Cases in Err. 1; 1 Hilliard on Mort., 2d ed., 118 ; 4 Kent's Com. 146; 2 Story's Eq. Jur. § 1027.

On the third point, viz., the additional remedy for obtaining possession given by the act of 1845, cited above by counsel, we have no doubt. That act related alone to the remedy; it gave a cumulative, and more speedy one. It did not impair the obligation of the contract, by taking away or embarrassing the remedy for the breach of it, but gave a more speedy process to enforce the obligation of the contract. Ind. Dig., p. 269; *Grimes* v. *Doe*, 8 Blackf. 371; *Davis* v. *The State Bank*, 7 Ind. 316.

" No one," says Judge *Story*, "will doubt that the Legislature may vary the nature and extent of remedies, so always that a substantial remedy exists." Story's Com. § 1379. It is competent for the Legislature to alter the remedy for enforcing the forfeiture of the charter of a corporation. The *Aurora, &c. Turnpike Co.* v. *Holthouse*, 7 Ind. 59. By the law of 1845, an administrator *de bonis non* could not sue his predecessor, in the trust, for a breach of duty, and it was held in *Graham* v. *The State*, 7 Ind. 470, that a statute authorizing the bringing of a suit in the name of the State, on the relation of an administrator *de bonis non*, on the bond of his predecessor, for a breach of duty, was valid, although the bond was executed before the passage of the act. See also the following cases cited by counsel: *Hancock* v. *Ritchie*, 11 Ind. 48; *Bigleow* v. *Pritchard*, 21 Pick. 169; *Walter* v. *Bacon*, 8 Mass. 469; *Stocking* v. *Hunt*, 3 Denio, 274; *Sturges* v. *Crowningshield*, 4 Wheat. 122; *Knight* v. *Dorr*, 19 Pick. 48; *Guild* v. *Rogers*, 8 Barb. 502; *Conkey* v. *Hart*, 4 Kernan, 22; *Morse* v. *Goold*, 1 Kernan, 281; *Van Rensselaer* v.

*Snyder*, 3 Kernan, 299; *Danks* v. *Quackenbush*, (opinion of *Gardener*, J.) 1 Comstock, 131; *Williams* v. *Potter*, 2 Barb. 316; *Van Rensselaer* v. *Hays*, 5 Smith, 19 N. Y. 68; *Van Ransselear* v. *Ball*, *id.* 100; *Mason* v. *Haile*, 12 Wheat. 370; *Coosa River Steamboat Co.* v. *Barclay*, 30 Ala. 120; *Com* v. *Phillips*, 11 Pick. 28; *Fales* v. *Wadsworth*, 10 Shep. 553; *Woods* v. *Buie*, 5 How. (Miss.) 285; *Read* v. *Frankfort Bank*, 10 Shep. 318; *Baugher* v. *Nelson*, 9 Gill, 299; *The People* v. *Tibbets*, 4 Cow. 384; *U. S. Bank* v. *Longworth*, 1 McLean, 35; *Pratt* v. *Jones*, 25 Vt. 303; *Searcy* v. *Stubbs*, 12 Geo. 437; *Paschal* v. *Perez*, 7 Texas, 348; *Hope* v. *Johnson*, 2 Yerger, 125; *West* v. *Creditors*, 1 La. R. 365; *Rockwell* v. *Hubbell*, 2 Doug. 197; *Evans* v. *Montgomery*, 4 Watts & Serg. 218; *Oriental Bank* v. *Freeze*, 6 Shep. 109.

After the most careful search we can find no ground on which to reverse the case.

*Per Curiam.*—The judgment is affirmed, with costs.

### Opinion on the Petition for rehearing.

1. It is contended that the State could not resell the land bid in by her at the first sale, till after the expiration of sixty days.

The statute of 1831, which provides for and regulates these Sinking Fund sales, expressly authorizes such resales immediately, and provides for no redemption of the land, or reinstatement of the mortgage, by the original mortgagor.

The act of 1845, (Laws 1845, p. 19,) does not repeal that of 1831, but provides, in § 2, that mortgagors may reinstate their mortgages within sixty days, but adds, in § 14, that there shall be no redemption.

In 1861, (Acts 1861, p. 123,) this act was passed, being in *pari materia*, with the others referred to:

"SECTION 1. *Be it enacted by the General Assembly of the State of Indiana*, That the second section of the act entitled, 'An act to authorize the Commissioners of the Sinking Fund to receive substitutions of stock mortgages, and for other purposes, approved *January* 28, 1847,' which is in the following words, to wit:

' SEC. 2. That in all cases of premises mortgaged to the Sinking Fund, or any fund loaned by the Auditor or Treasurer of State, being sold for failure to pay interest, the mortgagor, his heirs or assigns, shall have the privilege of reinstating such mortgage within sixty days after such sale, by paying the amount of interest and costs due thereon, and the interest for one year in advance,' be, and the same is amended so that the law on that subject shall be enacted as follows:

" That whenever real estate shall be sold that has or may be mortgaged to the State, on a loan of Sinking Fund money, or on a loan of any of the funds loaned by the Auditor or Treasurer of State, or as a substitution, the mortgagor, his heirs or assigns, provided five years have not elapsed since the date of the mortgage, shall have the privilege of reinstating said mortgage, within sixty days after such sale, by paying into the fund from which the loan was made, the amount of the interest and cost due thereon, and the interest for one year in advance, with 5 per cent. damages for the use of the purchaser on the amount of money by him actually paid on his purchase; but if five years have elapsed since the date of the mortgage, at the date of sale, that is to say, if five years or upwards have then elapsed since the loan was made, then, and in that case, the mortgagor, his heirs or assigns, may reinstate the mortgage at any time within sixty days from the day of sale, by paying into the fund the full amount of all interest and cost due, one sixth of the principal, and the interest for one year, in advance, on the residue, with 5 per cent. damages for the use of the purchaser on the amount by him actually paid in the purchase of the same: *Provided, however*, That the damages to be paid for the use of the purchaser, as required by this act, shall, where the sale shall be made on a credit, be estimated only on the amount of interest that such purchaser is required to pay in advance on the purchase money, and shall not be estimated on the principal of the purchase money in any case, except where the sale is made for cash."

This act shows that a resale was contemplated, and indicates the practice to be pursued in such cases, except that without this statute the purchaser would not have received

the 5 per cent. provided for on the money paid by him. It is a legislative interpretation, corresponding with that which the executive officers had given. It is not binding on the Court, but may aid in resolving a doubt upon construction. It follows that, as the resale was right, *Gavin* was entitled to his certificate at the sale. It further follows, that the question as to the time of payment of the overplus bid by *Gavin*, beyond the sum paid by the State, is between the State, or her officers, and the original mortgagor. See, on this point, however, § 4 of the act, the first section of which we have quoted above.

2. It is contended that the Auditor could not issue his writ for possession, not being a judicial officer. The writ was issued upon an affidavit, and the issue was a ministerial act. The judicial review of the sale and title would take place upon the injunction suit. See the act of 1845, *supra.* It is a practice analogous to the old one of distress for rent, &c., the legality of which was tested in a replevin suit. · On the dismissal of the complaint, the officer of course proceeded to execute his writ.

*Per Curiam.*—The petition for a rehearing is overruled.

*N. Trusler, J. P. Gardner, Jno. S. Reid* and *Thos. A. Hendricks*, for the appellant. ·

*John Yaryan, James Gavin* and *Oscar B. Hord*, for the appellees.