Bansemer and Others *v.* Mace and Others.

---

•BANSEMER and Others *v.* MACE and Others.

In an advertisement of the sale of lands mortgaged to the trust funds, it will be sufficient if it was in fact published sixty days prior to the day of sale, as required by law; and such abbreviations as "w. hf. of the n. w. qr. of sec. 35, in t. 23, n. of r. 4, w.," &c., will not vitiate it, but are sufficient description, and the particular fund need not be named in it, nor the exact amount due on the mortgage.

In the performance of his duties in reference to such sales, the Auditor of State may act by deputy; and if his deputy was regularly appointed, and acted in that capacity, but had taken his oath of office before a person not authorized to administer oaths, he will be

deemed an officer *de facto*, and his acts as such deputy held sufficient in any controversy concerning them where he is not a party, and is therefore not personally called upon to justify the acts done in his official capacity.

In such sales, the auditor is not required to offer the mortgaged property for sale in parcels, but may do so if necessary, to enable him to realize the amount of the debt and costs.

In the construction of statutes, the word *may* will be construed to be synonymous with the word *shall*, where public interests and rights are concerned, and where the public or third persons have a claim *de jure*, that the power should be exercised.

APPEAL from the *Tippecanoe* Circuit Court.

DAVISON, J.—This was a suit by *John C. Bansemer* and others, the heirs-at-law of *Loyal Fairman*, deceased, against *Daniel Mace* and others, to set aside a sale, made under a mortgage, on the west half of northwest quarter of sec. 35, in township 23, north of range 4 west, in *Tippecanoe* county. The mortgage bears date of *May* the 3, 1839, and was executed by *Fairman*, while in life, to *Nathan B. Palmer*, superintendent of the loan office, to secure the payment of 400 dollars to the college fund, at five years, with nine per cent. interest, payable yearly in advance. It is averred in the complaint, that, on the 23d of *January*, 1858, the principal and interest due on the mortgage amounted to $589\frac{90}{100}$ dollars, and that on said day the real estate so mortgaged, was offered for sale, ostensibly by *John W. Dodd* as Auditor, and *Aquilla Jones* as Treasurer, of State, and sold to *Daniel Mace* and *Godlove O. Behm*, for 410 dollars. This sale is alleged to be irregular and void. 1. Because the advertisement under which it was made was insufficient. 2. The Auditor and Treasurer did not attend the sale, either in person or by deputy. 3. The mortgaged premises were not offered for sale in parcels, though they were of the value of 3,000 dollars, and capable of being divided. The issues were submitted to the

Court for trial. Finding for the defendants, motion for a new trial denied, and judgment, &c. The only question raised in argument is, Was the evidence sufficient to sustain the finding?

A transcript of the record of the sale, from the Auditor's office, authenticated by the Auditor of State, was given in evidence. By that transcript it appeared that the sale of the land was duly advertised in the Indiana State Sentinel, a newspaper of general circulation published at *Indianapolis,* for sixty days prior to the 23d of *January,* 1858, the day of sale. But the advertisement itself, as printed in said newspaper, was also given in evidence, which, so far as it relates to the sale in question, reads thus:

" *Sale of Lands Mortgaged to Trust Funds.*

"The following described lands will, on *Saturday,* the 23d day of *January* next, between the hours of 9 o'clock A. M., and 4 o'clock P. M., at the Court House door, in the city of *Indianapolis,* be offered for sale to the highest bidder, the same having been mortgaged to the State of *Indiana,* to secure the payment of loans made on account of several funds therein named. No bid will be taken for a less sum than the amount chargable." The advertisement then proceeds to describe various tracts of land, and among them, the land in controversy is described as follows: "No. 306.—The w hf of the n w qr of sec 35, in t 23, n of r 4, w, containing eighty acres in *Tippecanoe* county; mortgaged by *Loyal Fairman.* Principal, interest, damages and costs, $554\frac{30}{100}$ dollars." This advertisement is said to be objectionable because it has no date; because it does not sufficiently describe the property to be sold; because it states the sum due to be 554 dollars and 30 cents, when the amount actually due was $589\frac{90}{100}$; and because the fund, on account of which the land was to be sold, is not named. None of these objections are available. The

proof is, that the advertisement was published sixty days prior to the 23d of *January*, 1858, and it sufficiently shows that these sixty days were next before the day of sale. The abbreviations in the description of the land are easily understood, and, moreover, the statement in effect, that the tract of land contained eighty acres, was situated in *Tippecanoe* county, and was mortgaged by *Loyal Fairman*, was of itself a description sufficient in an advertisement of sale. Nor was it at all important that the particular fund, out of which the loan was made, should be named in the advertisement, or that the amount due should be therein accurately stated, because the omission to state in the advertisement the name of the fund, or the exact sum to be collected, could not, to any extent, vary the result of the sale, or affect the rights of the parties. In reference to the second alleged irregularity, namely, that the Auditor and Treasurer did not attend the sale, the proof is, that the Treasurer did attend; that *Dodd*, the Auditor, was not personally present, but that one *Trumble G. Palmer* attended, and acted as deputy Auditor. The statute says: "At the time appointed for such sale, the Auditor and Treasurer of State shall attend." 1 R. S. p. 510. There is, however, another statute which authorizes the Auditor to appoint a deputy, and provides that he "shall take the oath required of his principal, and may perform all the official duties of his principal, being subject to the same regulations and penalties." *Id.* p. 256, secs. 1, 2. No doubt the sale of the land, in this instance, was an official duty, which the Auditor could perform by deputy. But it appeared in evidence that *Palmer*, though he was regularly appointed as deputy, had the oath which he took, as such, administered by the Auditor himself. Hence, it is insisted that he could not legally act under his appointment. This position, when applied to the case at bar, is not strictly correct. Our statute, it is true, confers no authority upon the Auditor of State to

administer such oath; and *Palmer* was not, therefore, properly inducted into office. He was, however, regularly appointed, and the evidence proves that, as deputy, he had discharged the duties of Auditor continually since the 14th of *March*, 1857; and the result is, he must, in the performance of the duties of Auditor at the sale in question, be regarded a deputy —not *de jure*, but *de facto*. This, then, being the case, the sale, so far as it was conducted by *Palmer*, is legal and operative, because the rule is well established, that the act of an officer *de facto*, in the ordinary exercise of the functions of his office, are valid in respect to third persons, who may be interested. This rule is deemed necessary to prevent a failure of justice. Thus it has been decided that "the acts of a deputy sheriff duly appointed, but not having taken the required oath, in levying an execution on real estate, were valid, as they respected third persons." *Buckman* v. *Ruggles*, 15 Mass. 189; *Highby* v. *Collins*, 7 Johns. 549; *McGregor* v. *Balch*, 14 Vt. 428; Wheeler's Am. Com. Law, p. 142. Where, however, *an officer is himself* called upon to justify an act done in the discharge of his official duties, his defence will not be held effective, unless it shows not only a valid election or appointment, but also his legal induction into office. *Courser* v. *Powers*, Am. Law Register, New Series, No. 5, p. 268, and cases there cited. But, in the case before us, the deputy Auditor is no party, and is, of course, not called upon to justify his official conduct at the sale. He has no interest in the suit, and his acts are considered, only so far as they relate to the interest of third persons, and must, in that respect, be held valid.

The third alleged irregularity in the sale remains to be considered. Were the State officers, who conducted the sale, bound to offer the mortgaged lands in parcels? The statute provides that "the Auditor shall make sale of so much of the mortgaged premises, to the highest bidder, for cash, as will

pay the amount due for principal, interest, damages and costs, and such sales may be in parcels, so that the whole amount may be realized." 1 R. S. 510, sec. 44. There was evidence tending to prove that the deputy Auditor, when he commenced the sale, stated the amount of the debt, &c., to be $580\frac{90}{100}$ dollars, and then asked if any one present would give that sum for any less number of acres than was contained in the entire tract; and no one bidding, he offered the whole tract, &c. This was not an offer to sell in parcels; it was, however, in effect, a proposal to sell as much, and no more, of the land, than would pay the sum collectable on the mortgage. But, as we have seen, the statute says, "such sales *may* be in parcels, *so that the whole amount may* be realized. Upon this branch of the statute, it is argued that the word *may*, as used in reference to "sales in parcels" imports "shall," and, in sequence, the offer to sell the entire tract, without first offering it in parcels, was unauthorized. "In the construction of statutes the word 'may' will be construed to be synonymous with 'shall,' where public interests and rights are concerned, and where the public or third persons have a claim *de jure*, that the power should be exercised." *Newburgh Turnpike* v. *Miller*, 5 Johns. Ch. 101; *Nave* v. *Nave*, 7 Ind. 122. Had this mortgagor a right, in this instance, to have the power to sell in parcels exercised? As we construe the statutory provision referred to, it is only where the sum due can not be realized by an offer to sell the entire tract, that the Auditor may sell in parcels. This construction being correct, and we think it is, the provision, so far as it relates "to a sale in parcels," is for the benefit of the fund, and not the mortgagor. It follows, he had no right to have the power "to sell in parcels" exercised; and, consequently, none to have the word "may" construed to be synonymous with "shall." In our opinion, the finding was right on the evidence, and the judgment must therefore be affirmed.

*Per Curiam.*—The judgment is affirmed, with costs.
*George Gardner,* for the appellants.
*D. Mace* and *R. C. Gregory,* for the appellees.