Vail et al. *v.* McKernan.

———◦◦◦———

Vail *et al. v.* McKernan.

Mortgage Sale by State—Contract.—Where the Auditor and Treasurer of State, on a Saline Fund mortgage, on which the mortgagor, and the persons holding under him, have failed to pay the interest, offer the mortgaged property for sale, for the collection of a larger sum than the amount actually due upon the mortgage debt, at the date of the sale, and no person offers to purchase the property at the excessive price demanded, and the same is therefore purchased by the State, at such excessive price, the sale so made to the State will be void, by reason of such excess, and a subsequent sale thereof, by the State to another person, will also be void, be-

cause the State, by her purchase, having acquired no title, can transmit none.

ONUS PROBANDI.—A person who seeks the interposition of the Courts to avoid a sale of lands, except, perhaps, in the case of tax sales, assumes the *onus* of showing that he is entitled to the relief asked.

EVIDENCE.—In such case, copies from the books of the Auditor of State, duly certified, would be legal evidence to show the condition of the account for principal and interest against the mortgagor.

RULES OF CIRCUIT COURTS.—A rule of the Circuit Court, which requires parties desiring a change of venue to make their applications therefor at least one day before the day on which the cause is set for trial, is within the power of the Court to regulate the transaction of the business therein, and valid.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—In 1841, *Charles Garner* mortgaged a tract of land to the State, to secure a loan of 500 dollars, made to him out of the Saline Fund. The land subsequently passed by sale to successive purchasers, subject to the mortgage, and finally came to the hands of *James H. McKernan.*

In 1860, the land was sold on the mortgage, for an amount due on the same, alleged to be 637 dollars and 25 cents, exclusive of damages, &c., to *Mary A. Vail,* and a warrant was issued by the Auditor of State to the sheriff of *Marion* to put her in possession.

*McKernan* procured an injunction to restrain the sheriff from executing the warrant; and he prayed that the sale by the State be vacated and held void, because it was illegally made, there having been due, when it was made, but 607 dollars and 25 cents, exclusive of damages, &c., and not 637 dollars and 25 cents.

One paragraph of the answer was the general denial. This put upon the plaintiff the burden of proving the negative allegation in his complaint, that the sale was not made, by the

Vail et al. *v.* McKernan.

State, in the first instance, for the sum actually due. *Maynes* v. *Moore et al.*, 16 Ind. 116. And the case, by agreement of parties, seems to have been tried upon this single question. The Court below set aside the sale as void.

The first point to be settled, then, is, how much was due at the time of the offer to sell on the mortgage by the State? On this point, the case is clear. When *Garner* made the loan from the State, an account was opened with him by the Auditor of State, who kept the debits and credits, on his books. He charged *Garner*, on one side, with the principal sum loaned, and the annually accruing interest, and, on the other, he credited him with the amounts paid on the interest. All the amounts paid were paid on the interest. This is shown by the receipts. They did not, in all cases, express any particular year's interest, but that the amount was paid on account of interest on the loan. We copy one as an example:

"No. 7646.     OFFICE OF TREASURER OF STATE,     $163 56.
*Indianapolis, Nov.* 30, 1860.
"Received of *Charles Garner* the sum of 163 dollars and 56 cents, on account of interest on Saline Fund Loan, 182.
"J. P. DRAKE, Treasurer."

The State received and used all the moneys thus paid. There was nothing for the officers of State, or any other person, to do, who wished to ascertain the amount due on the *Garner* loan, but to add up and balance the debit and credit sides of the account. The account showed, that, when the State offered the mortgaged premises for sale, there was due on the mortgage 607 dollars and 25 cents. The officers made a mistake in casting up and balancing the account. Copies of the Auditor's books, duly certified, were legal evidence to show the state of the account. This proposition is deducible from 1 G. & H. p. 119, requiring the Auditor to keep accounts with

Vail et al. *v.* McKernan.

State debtors, and 2 *id.* p. 183, sec. 283, making copies of his books evidence. The copies of the receipts, given in evidence, were not objected to, and no question, therefore, is before us on their admissibility. Those receipts, with the admissions in the cause, sustain the judgment. See *Williamson* v. *Doe*, 7 Blackf. 12, as to the old law touching school commissioners' entries. But see 1 Greenl. Ev. 10 ed. p. 215, sec. 147.

The amount, then, for which the property should have been offered for sale was 607 dollars and 25 cents, with damages, &c. The amount for which it was offered was 637 dollars and 25 cents, with damages, &c.; and the question now is, what was the effect of this offer for sale, and sale upon an erroneous amount?

The statutory duty and power of sale were thus prescribed and given, viz: "to advertise the mortgaged premises sixty days in one or more newspapers of this State, and make sale of so much of the same as will pay the principal and interest secured by said mortgage, with five per centum damages, and the costs of advertising the same; and if said land will not sell for so much ready money as will pay the principal, interest, damages, and costs as aforesaid, it shall be the duty of the Superintendent to buy the same for the benefit of the *Indiana* College; and immediately, if possible, or at any time thereafter, he may proceed to sell said land to the highest bidder," &c. R. S. 1831, p. 500, sec. 7.

By this statute two sales are authorized. The first must be upon an offer of the mortgaged premises, or so much thereof as will bring that sum, upon the sum due on the mortgage, with five per cent. damages on that sum, and the costs of advertising. If no sale takes place, on this offer, to a third person, the State may become the buyer, and afterwards resell, &c. But the second sale can not, according to the statute, regularly take place till there has been an offer upon the mortgage for the sum due upon it, with the five per centum

Vail et al. *v.* McKernan.

and costs, and a purchase, on failure of other bidders, by the State, for that sum. In the case at bar, the first offer of sale required by the statute was never made; nor did the State purchase, on a failure of other bidders, on such offer; for an offer of sale upon 637 dollars and 25 cents, with damages, &c., is not an offer upon 607 dollars and 25 cents, with damages, &c. The State purchased in the land, then, without any legal offer of sale having been first made, and afterwards sold it to *Vail;* and the question is, did *Vail* get any title? If the State had none when she sold, of course, *Vail,* as buyer, got none. Did the State acquire any title by her purchase? In *Doe* v. *Chunn*, 1 Blackf. 336, Judge *Scott* says: "To take private property by public authority, even for public uses, without a just and fair equivalent, is contrary to the fundamental principles of free government. Any statute, therefore, which goes to divest the title of a citizen to real estate, although it may be for the public good, must be strictly construed. Its provisions can be enforced no further than they are clearly expressed."

In *Williamson* v. *Doe*, 7 Blackf. 12, Judge *Dewey* says:

"It is evident that the powers of the commissioner, above specified, are limited, special, naked powers, not coupled with an interest. The law respecting such powers is, that they must be strictly pursued to render valid the acts of the agent possessing them. The facts on which the right to exercise his powers depends, must exist, or his transactions will be without authority and void."

This is the doctrine of *Doe* v. *McQuilkin*, 8 Blackf. 335; *id.* 581; *Stevenson* v. *Doe*, *id.* 508. See, also, *Bansemer et al.* v. *Mace*, 18 Ind. 27; *Patterson et al.* v. *Reynolds*, 19 *id.* 148. The same doctrine is held in *Doe* v. *Collins*, 1 Ind. 24; in *Hutchins* v. *Doe*, 3 *id.* 528; in *Skelton* v. *Bliss*, 7 *id.* 77, and in *Maynes* v. *Moore*, 16 Ind. 116.

In this class of cases, it is not a question of good faith, but

of power and conformity to prescribed modes of action. And the purchaser buys at his peril. This is the law which persons are bound to take notice of. Hence, persons intending to purchase, may be presumed to examine into the facts of the case prior to the sale, and to be influenced by those facts. Hence, irregularities would be presumed to operate injuriously upon the sale, as intended bidders, knowing the effect of them, would be deterred from bidding. *Olmstead* v. *Elder*, 1 Selden, 144, and cases cited. We think the State acquired no title by her alleged purchase, and, of course, could transfer none to *Vail*.

One other point. *Vail* applied for a change of venue on the day the cause was set for trial. A rule of Court required such application to be made, at least, one day before the day on which the cause, in which the change was applied for, was set for trial. We see nothing unreasonable in this rule. It strikes us as judicious; and the Court, both inherently and by statute, has power to prescribe reasonable rules for the regulation of business therein.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Wm. Patterson* and *N. B. Taylor*, for the appellants.[1]

*McDonald & Porter*, *Thos. A. Hendricks*, and *Oscar B. Hord*, for the appellee.[2]