# THE

# INDIANA LAW REPORTER.

[We are indebted to John R. Wilson, Esq., of the Indianap-olis Bar, for the following opinion.]

## ISAAC P. GRAY, GOVERNOR, ET AL., *v.* THE STATE, EX REL. COGHLEN.

Mandamus to compel payment of bonds with 7 per cent. interest, issued by the State in 1836, due twenty-five years after date, and the payment of which was pro-vided for by Act of December 12, 1872. In May, 1879, the State officers, on de-mand made, refused to pay more than 6 per cent. interest, instead of 7 per cent., the legal rate in New York, where the bonds were payable. The bonds were as-signed to relator before maturity.

1. *Discretion of State Officers.*—The State officer had no discretion in the matter of redeeming the bonds, it being the plain intention of the Legislature that the bonds should be paid, and not that they should be left paid, or unpaid, at the option of the officers. And a mandamus will lie to compel the payment. 18 Ind., 27 ؛ 39 Ind., 272.

2. *Interest on Coupons.*—Not only is the holder entitled to interest on the prin-cipal, but also on each coupon as it falls due. 94 U. S., 437; 63 Pa. St., 108; 2 Daniels on Neg. Instr., ₹ Parsons on Contr. (6 Ed.), 102.

3. *Lex Loci as to Rate of Interest.*—The State should stand as an individual debtor, or other public corporation, as to obligation to pay interest. 96 U. S., 432—445. And so the rate of interest must be determined, not by the law of Indiana where the bonds were made, but by the law of New York, where they were to be paid. 15 Ind., 32; 22 Ind.; 83; 61 Ind., 425.

Filed February 21, 1881.

Appeal from Marion Superior Court.

Opinion of the court by Mr. Justice Worden.

This case originated in a complaint by the appellee, against the Governor, Attorney General, Treasurer and Secretary of State, of the State of Indiana, for a writ of mandate.

Objection is made to the complaint; but as the cause was finally submitted on an agreed statement of the facts, in accordance, as we think, with section 386, of the code, we deem it unnecessary to set out the complaint, or inquire into its sufficiency.

The following is the agreed statement of the facts accompanied by the affidavit required by the statute.

"Come now the above named parties, the State of Indiana, on relation of Henry Coghlen, by Baker, Hord & Hendricks and John R. Wilson, attorneys, and the defendants by Thomas W. Woollen, Attorney General of the State of Indiana, their attorney, and by agreement submit this cause to the consideration of the court for finding a judgment upon the following facts, to-wit: On the first day of July, 1836, the State of Indiana, by her agents, lawfully authorized thereunto, executed and delivered her certain negotiable bonds, dated of said last named date, to J. J. Cohen & Brothers; said bond being numbered 283, whereby she promised to pay to the said J. J. Cohen & Brothers, or bearer, the sum of one thousand dollars, with interest thereon at the rate of five per cent. per annum, from said date of execution to maturity, at the Merchants' Bank in the city and State of New York; said bond maturing twenty-five years from date of same, to-wit: On the 1st day of July, 1861, said interest being payable in semi-annual installments of $25 each, which semi-annual installments of interest to maturity being put into coupon notes, and attached to said bond, the same numbering fifty at the date of the execution of said bond.

"Before the maturity of said bond, or any of the said coupons, the said bond and coupons were duly sold, assigned, and delivered to the relator herein, Henry Coghlen, who is the present owner of said bond, and forty-one coupons thereto attached—the other nine coupon notes having been paid to said Coghlen by the State of Indiana. The following are copies of said bond and the forty-one coupons, to-wit:

"'UNITED STATES OF AMERICA,  
"'STATE OF INDIANA,  
"'INTERNAL IMPROVEMENT LOAN.  

"'$1,000, five per cent. stock.                    No. 283.

"'Under the act of the General Assembly of the State of

Indiana, entitled ' An act to provide for a general system of internal improvement in Indiana,' ' approved January 27, 1836.

" ' *Know all Men by these Presents.*—That there is due from the State of Indiana to J. J. Cohen & Brothers, or bearer, the sum of one thousand dollars, bearing an interest of five per centum per annum, from the date hereof; the first of which interest is payable the first day of January next, and, thereafter, semi-annually, on the first days of July and January, at the Merchants' Bank in the city of New York, on presentation and delivering of the dividend warrants severally hereto subjoined until payment of the principal sum; being stock created in pursurance of the act of the General Assembly aforesaid, is payable twenty-five years from the date hereof. And for the payment of the interest and the redemption of the principal aforesaid, at the city of New York, the faith of the State of Indiana is irrevocably pledged. Witness our hands at Indianapolis, this the 1st day of July, 1836.

" ' Jno. Sullivan,    ⎫<br>
" ' Samuel Hanna,   ⎬ Commissioners.'<br>
" ' Isaac Coe.       ⎭

" Indiana Internal Improvement Loan, under the act of January 27, 1836. Merchants' Bank, in the city of New York, pay to bearer twenty-five dollars, being interest on bond No. 283, due 1st July, 1841."

(Here follow copies of the unpaid coupons down to and including that payable July 1, 1861; which need not be set out in this opinion).

" That, on the 12th day of December, 1872, the General Assembly of the State of Indiana, by an act, entitled ' An act to provide for the payment of sundry bonds or stocks of the State of Indiana, issued prior to the year 1841, and declaring an emergency,' Acts 1872-3, p. 11; which act was approved and took effect as a public law on said 12th day of December, 1872, made provision for the payment of one hundred and ninety-one bonds, with coupons to the same belonging, upon the terms therein set forth.

" And it is further agreed that the bond and coupons hereinbefore set out, is one of the one hundred and ninety-one bonds, with coupons, contemplated in said act aforesaid, and for which

said act provides payment; and that since the passage of said act, all the one hundred and ninety-one bonds named in its preamble have not been paid, but a number of the same remain unpaid.

"That said bond and forty-one coupons belonging to the same are now due and unpaid; that at a meeting of said officers of State, before mentioned, for the purpose of looking up and redeeming certain of said bonds contemplated by said act, and in accordance with its terms, on the second day of May, 1879, at the office of the Governor aforesaid, in the city of Indianapolis, in the State of Indiana, said relator, by his agent, John R. Wilson, did duly present to said officers, said bond and said forty-one coupons, and demand payment of said bond of a thousand dollars, with interest on said bond from its maturity, on the first day of July, 1861, to said second day of May, at the rate of 7 per cent. per annum; also interest at seven per cent. per annum on said coupons from maturity to said day of presentation; the amount of the same so demanded being the following sum, to-wit: $5,274.54, said rate of interest being the accustomed rate under the public law of the State of New York, where said bond and coupons were payable; but said agents of the State aforesaid refused to pay said sum so demanded; and in furtherance and in expression of such refusal, adopted the following resolution

"*Resolved*, That the board authorize the Auditor of State to issue his warrant on the Treasurer of State, in payment of Internal Revenue Bond, No. 283, as follows:

On account of principal of bond, - - - - $1,000.00
For forty-one coupons, $25 each, - - - - 1,025,00
Interest on bond from maturity, July 1, 1861, to
    February 13, 1873, - - - - - - 697.00
Interest on coupons to February 13, 1873, - - - 329.63

"That said board, by its resolution, offered to pay said bond and coupons, with interest on the same at the rate of six per cent. per annum, from the maturity of the same to the 13th day of February, 1873, and at no greater rate, and for no longer period; said board, consisting of said officers, having on the 13th day of February, 1873, adopted the following resolution, to-wit:

"That as the State has announced her readiness to pay the

bonds by making public the law for that purpose, interest be allowed up to February 13, 1873, and not thereafter.

"It is further agreed that, at the date of the execution of said bond and coupons, and from said date to the present time, under a public law of the State of New York, in that behalf enacted, the customary or legal rate of interest on such a contract as that contained in said bond and said coupons, after maturity of the same, and in the absence of a stipulation to the contrary, is at the rate of seven dollars on the hundred dollars.

"Upon which facts, if the law be with the plaintiff, judgment shall be for the plaintiff that a mandamus issue commanding said defendants to act accordingly; and if the law be with the defendants, judgment be accordingly."

This agreement was duly signed by the attorneys for the plaintiff and by the Attorney General for the defendants.

On this agreement it was adjudged by the court below, at special term, "that a peremptory mandate issue herein commanding the said defendants to take up and redeem the bond and the coupons thereto belonging, set out in the agreed statement of the facts herein; the said defendants to calculate the interest on the principal bond from its maturity, July 1, 1861, to the time of payment, at the rate of seven (7) per cent. per annum, and calculate the interest on said coupons at the same rate from their respective dates of maturity to the time of payment; said defendants to direct in writing the Auditor of the State of Indiana to issue his warrant on the Treasurer of the State of Indiana in favor of the said relator, Henry Coghlen, for the payment of said principal bond of one thousand ($1,000) dollars, with interest on the same as aforesaid, and the said forty-one (41) coupons of twedty-five ($25) dollars each, with interest on the same as aforesaid; said sums to be paid the relator herein."

The judgment thus rendered at special term was affirmed at general term, and its correctness is questioned by an assignment of error in this court.

It is not necessary, for the purposes of this case, to advert to the act of January 27, 1836, to provide for a general system of internal improvements, under which the bond in question was issued.

It is sufficient to say that the validity of the bond is not questioned; nor is it denied that the faith of the State of Indiana is pledged to its payment, with the interest coupons.

Nor is it necessary to advert to the act of January 19, 1846, to provide for the funded debt of the State of Indiana, and for the completion of the Wabash and Erie canal to Evansville; and the act supplementary thereto of January 27, 1847, under which a large portion of the internal improvement bonds theretofore issued were surrendered. Such bonds were not all surrendered, and, in 1872, the Legislature passed the following act for the payment of such as might be outstanding:

(Approved December 12, 1872.)

"WHEREAS, There are still outstanding one hundred and ninety-one old bonds or certificates of stocks issued by and under the authority of the laws of this State prior to the year 1841, upon some of which no interest has been paid since January, 1841, and upon others of which the interest has been settled up to July, 1868; therefore,

"§ 1. *Be it enacted by the General Assembly of the State of Indiana:* That the Governor, Attorney General, Secretary of State, and Treasurer of State, or a majority of them, be, and they are hereby, authorized and empowered to take up and redeem said bonds, with the coupons thereto belonging, mentioned in, or contemplated by, the preamble to this act, and for that purpose a sum of money sufficient to accomplish the object is hereby appropriated; the sum to be drawn from the treasury on warrants of the Auditor, in such sums and at such times as the Governor, Attorney General, Secretary of State, and Treasurer of State shall, from time to time, in writing, order or direct; every such direction stating the amount to be drawn, and the purpose for which it shall be used, and every sum thus drawn shall be applied by the Treasurer of State, under the direction of the Governor, Attorney General, and Secretary of State, to the purpose for which it shall have been drawn.

"§ 2. No money shall be drawn from the treasury by virtue of this act over and above what may be necessary to pay and redeem one hundred and ninety-one bonds, and their coupons, such as are described in the preamble to this act, and such bonds

shall be redeemed in the order of their presentation at the Treasury of State for redemption: *Provided*, That no bond or coupon shall be paid or redeemed until it shall have become due and payable according to the tenor and effect thereof.

"§ 3.   It shall be the duty of the Governor, Attorney General, Secretary of State, and Treasurer of State, to exercise the utmost scrutiny in testing the genuineness and validity of each bond and coupon which may be presented for redemption under the provisions of this act; and no bond or coupon shall be paid or redeemed unless the same is surrendered to the Treasurer of the State at the time of redemption; the bonds and coupons so redeemed shall be preserved by the Treasurer of State, and be subject to such disposition as the General Assembly may hereafter cause to be made thereof.   And the Governor, Attorney General, Secretary of State, and Treasurer of State shall, immediately after making any redemption under this act, prepare and sign a detailed description of the bonds and coupons so redeemed, with the date of redemption; and such description shall be filed in the office of the Auditor of State, and shall be recorded by him in some book to be provided and kept for that purpose.

"§ 4.   If, at any time, there shall not be money enough in the Treasury not otherwise appropriated to enable the officers of State heretofore mentioned to carry out the provisions of this act, then, and in that case, it shall be lawful for the said officer of State to negotiate and make, for and on behalf of the State, a temporary loan or loans, of such sum or sums of money as may be necessary, not, however, exceeding in the aggregate, the sum of two hundred thousand dollars, on the best attainable terms; such loan or loans to be payable at the expiration of forty days from and after the commencement of the next succeeding session of the General Assembly.

"§ 5.   An emergency is hereby declared to exist, requiring the immediate taking effect of this act, wherefore the same shall take effect and be in force from and after its passage."

The words of the statute are "the Governor, Attorney General, Secretary of State, and Treasurer of State, or a majority of

them, be, and they are hereby, authorized and empowered to take up and redeem said bonds," etc.

It is claimed, as we understand the argument for appellant, that as the language of the statute was merely permissive, conferring the power and authority upon the officers mentioned, without in terms making it their duty to take up and redeem the bonds, etc., they have a discretion to do so or not; and that, therefore, mandamus will not lie against them to compel them to do so.

But we are clear in the opinion that there was no such discretion to be exercised by the officers named. It was the intention of the Legislature that the bonds should be paid, and not that they should be paid or unpaid at the option of the officers named. This is clearly gathered from the tenor of the entire act. The appropriation of money, and the authority conferred upon the officers named to borrow money for the purpose of the act tend to repel the idea that the Legislature intended to leave it to the option or discretion of the officers named whether this indebtedness should be paid or not.

Authorities upon the point are numerous. Where the words of a statute are permissive merely, in cases where public interests and rights are concerned, or where the public or a third person has a claim *de jure* that the power should be exercised, they will be construed as obligatory. *Bansemer* v. *Mace*, 18 Ind., 27; *The State* v. *Buckler*, 39 Ind., 272; See also Potter's Dwarris, p. 220, and Sedgwick on Const. Stat. (2 Ed.) p. 16, and note.

By the third section of the act it is made the duty of the officers named "to exercise the utmost scrutiny in testing the genuineness and validity of each bond and coupon that may be presented for redemption under the provisions of this act." But the case is relieved from any difficulty in this respect by the agreement that the bond and coupon mentioned therein is one of the bonds, with coupons, contemplated in the act mentioned, the bonds and coupons conceded to be genuine. There was nothing further about which to exercise judgment, and no direction was left to refuse payment.

It is also insisted by the appellant that the executive, legislative, and judicial are co-ordinate departments of the govern-

ment, neither of which can interfere with the functions of the other; and therefore that mandate will not lie against the Governor.   To this point High on Extraordinary Legal Proceedings, § 188 to 120, is cited.

On this point it is said in 2 Dill. Corp., § 671, "so where there is a duty *purely ministerial and not discretionary* devolved by law upon the public officers of the State, and the refusal or neglect to perform the duty affect a specific legal right, the person thereby injured may have a *mandamus*.   This doctrine, under the conditions just stated, has been very generally considered to be applicable to the *executive head* of the State, but it should obviously be limited to cases where the right of the relator is plain, and the duty of the executive clearly ministerial, and not discretionary."

In the case of *The Governor* v. *Nelson*, 7 Ind., 496, a mandate was sustained against the Governor to enforce the performance of a duty not discretionary—the issuing of a commission.   So in *Biddle* v. *Willard, Gov.*, 10 Ind., 62, a demurrer to a complaint for a mandamus against the Governor to compel the issuing of the commission was held to have been rightfully sustained, not upon the ground that the writ would not lie, but upon other grounds.   Again, in the case of *Baker, Gov.* v. *Kirk*, 33 Ind., 517, a writ of mandate against the Governor to compel the issuing of a commission was sustained.

Although the objection made in this case may not have been made in those above cited, still they go far to establish the proposition that in this State a mandate will lie against the executive to enforce the performance of a ministerial duty not resting in the discretion of the Governor.

But the question whether a mandate will lie against the Governor to enforce the performance of an executive duty does not arise in this case.   The duty of the Governor, in connection with the other officers named in the act, is not executive.   The executive power of the State is vested solely in the Governor. Any power or authority vested by the Legislature in the Governor, together with other officers or persons, in which they are to have an equal voice with him, cannot be executive, as he alone is vested with the executive power of the State.   Any duty which

he is by law required to perform, in connection with others, in which they have an equal voice with him, can, in no sense, be said to be an executive duty.

The Governor and the other officers named in the act may well be regarded as constituting a board, organized by the Legislature for the performance of certain duties; and a mandate will lie against them to enforce the performance of the duties prescribed. The duties to be performed under the act, save, perhaps, determining the genuineness of the bonds and coupons presented for redemption, were purely ministerial. A ministerial act is defined to be "one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done." *Flournoy* v. *City of Jeffersonville*, 17 Ind., 169, 174.

We pass now to some questions respecting the interest on the bond and coupons after the maturity of each respectively.

It is clear that the holder is entitled to interest on the bond and coupons after the maturity of each. The interest accruing on the bond after maturity is as much a part of the debt as the original principal, and each coupon after maturity became a principal debt entitled to draw interest. *National Bank, etc.*, v. *Mechanics' National Bank*, 94 U. S., 437; *Heath* v. *Page*, 63 Pa. St., 108; 2 Dan. on Neg. Inst., § 1513, and note; 3 Pars. on Cont. (6 Ed.), 102–3; *The City of Jeffersonville* v. *Patterson*, 26 Ind., 151.

It has been questioned whether the act of the Legislature is broad enough to authorize the officers mentioned to pay the interest on the bonds and coupons, as well as the principal. But on this point we have no doubt.

The language of the act is "that the Governor, etc., are hereby authorized and empowered to take up and redeem said bonds, with the coupons thereto belonging." It is difficult to see how the bonds and coupons could be taken up and redeemed without paying what might be due upon them for principal and interest. The language is broad enough to covey whatever might be necessary to legitimately take up and redeem the paper. We should be slow to impute to the Legislature a purpose to pay

merely the principal of the indebtedness of the State, and to repudiate the interest.

The holder of the bonds and coupons being entitled to interest on the same, and there being ample power vested in the act to pay the same as well as the principal, the question arises whether the interest stopped running by reason of the resolution of the board, of February 13, 1873, "that, as the State has announced her readiness to pay the bonds, by making public the law for that purpose, interest be allowed to February 13, 1873, and not thereafter."

Whatever might have been the effect of the resolution thus passed, as to the stoppage of interest if the bonds had been made payable at the State Treasury, or generally without naming any place of payment, such was not the case here. Here the bond was specifically made payable at the city of New York. The language of the bond, after naming the Merchants' Bank in the city of New York as the place of payment, is as follows: "And for the payment of the interest" (for which the coupons were given,) "and the redemption of the principal aforesaid, at the city of New York, the faith of the State of Indiana is irrevocably pledged." Thus, by the terms of the bond the State was to provide funds in the city of New York, and there pay it, and the interest coupons. The State could not, without a breach of its contract, and a violation of its plighted faith, refuse to pay them at the place named. There the creditor had a right to look for his money; and there the State, if required, must pay it, or break its contract and its faith thus irrevocably pledged.

The passing of the act providing for the payment of the bond and coupons, and the resolution of the board above mentioned, could not have the effect of stopping interest, without some act that would amount to an offer to pay, or a tender of the funds at the place named for payment.

The next and only remaining question as to interest relates to the rate to which the creditor in the case is entitled. And here we may observe that we see no reason why the State, as a debtor, should be placed in any other or different situation, as to its obligation to pay interest, than that occupied by any private debtor, or other public corporation. 1 Dan. Neg. Inst., § 436; *Murray*

v. *Charleston*, 96 U. S., 432. In the case last above cited the court said: "The truth is States and cities, when they borrow money and contract to pay it, with interest, are not acting as sovereignties; they come down to the level of ordinary individuals. Their contracts have the same meaning as that of similar contracts between private persons."

Neither the bond nor the coupon provides for the rate of interest after maturity. The rate, therefore, must be determined by law. *Holden* v. *Trust Company*, 100 U. S., 72; *Boone* v. *Roderson*, 68 Ind., 202.

By what law, then, must the rate of interest be determined—that of Indiana, where the instruments were made; or that of New York, where they are to be performed. This question admits of but one answer; and that is, that the law of New York must determine the rate. In *Hart* v. *Standast*, 15 Ind., 33, it was said by this court: "In the case of a note made in one State, and payable in another, it is clear by all the authorities that the maker will be held liable, according to the law of the place where it is payable, as that is the place where the contract is to be performed; and he is presumed to have contracted with reference to the law of that place." See also *The City of Aurora* v. *West*, 22 Ind., 88; *Browning* v. *Merritt*, 61 Ind., 425.

It is a general principle that it is the law of the place of performance by which the mode of fulfilling the obligation is governed. Wharton on Conflict of Laws, § 41, and notes. In respect to interest, the author says, at § 503: "Interest based on contract, either directly, or by implication, there being no wrongful act charged, the general result of the adjudicated cases, both in England and the United States, is, that interest of this character is to be governed by the law of the place where the contract is to be performed." See cases collected in a note to the section above quoted.

This brings us to the end of the case, except as to a question as to the power of the officers to make the loan of money as provided for in the 4th section of the act above set out. It is contended by the appellants that the act to provide means for the erection of a new State House, etc., approved March 13, 1879 —Acts 1879, p. 195—and the act to authorize a loan to pay off

the temporary loan debt heretofore incurred, approved March 27, 1879—Acts 1879, p. 200—repeal so much of the 4th section above noticed as authorized a loan, and cuts off the power of the officers to make such loan.

We think, however, the question does not arise in the case. The irresistible inference from the facts agreed upon is, that there was money in the Treasury, duly appropriated, sufficient to pay the relators, without any loan, or further loan, for that purpose.

The board resolved to pay the relator's bond and coupons, but not the amount of interest to which he was entitled; also, that as the State had announced its readiness to pay the bonds, etc., no interest would be allowed after the date mentioned. All this clearly implies that there was money in the Treasury for the purpose of payment.

But, if a loan should be necessary to carry out the purpose of the act, and further legislation should be thought necessary, the Legislature will doubtless take the matter into consideration, and make such provision as they may deem proper.

There is no error in the record.

The judgment below is affirmed with costs.