No. 10,514.

THE BOARD OF COMMISSIONERS OF TIPPECANOE COUNTY *v.* THE STATE, EX REL. ATTORNEY GENERAL.

COMMON SCHOOL FUND.—*Estrays and Property Adrift.— Unclaimed Proceeds of Sales.—Act of January 15th, 1844.*—Under the *first* clause of the schedule annexed to the Constitution of 1851, the act of January 15th, 1844, entitled "An act converting the moneys arising from the sale of estrays and property taken up adrift into the common school fund " (Acts 1844, p. 86), not being inconsistent with the Constitution, and not having expired or been repealed, has remained and is in force; and under its provisions and those of section 4325, R. S. 1881, all moneys arising from the sale of estray animals and property taken up adrift, "so soon as the same shall have vested absolutely in any county," become a part of the common school fund of the State.

SAME.—*Attorney General.—Relator.*—Where suit is brought by the State for the recovery of any part of its common school fund, the Attorney General is the proper officer to wage such suit, and is a proper relator therein.

From the Tippecanoe Circuit Court.

*F. B. Everett*, for appellant.

*D. P. Baldwin*, Attorney General, and *C. H. Wallace*, for appellee.

HOWK, C. J.—This was a claim presented for allowance in the name and on behalf of the State of Indiana, on the relation of its Attorney General, to and against the appellant, the Board of Commissioners of Tippecanoe county. The claim was disallowed by the appellant, and the State, by its Attorney General, appealed to the court below. There the cause was tried by the court, and, at the request of the appellant, the court made a special finding of the facts, and stated its conclusions of law thereon, in writing, in favor of the appellee. Over the appellant's exceptions to the conclusions of law the court rendered judgment in accordance therewith.

In the appellee's claim or complaint in this cause it was averred that, prior to December 1st, 1880, the treasurer of Tippecanoe county had collected from the various officers of such county, as the proceeds of the sales of estrays and property adrift, the sum of $903.49; that, on that day, all of said sum of money had ceased to be reclaimable by the owners thereof; that said money had become, and then was, a part of the common school fund of this State; that such moneys had been placed among, and made a part of, the county revenue of Tippecanoe county; that although demanded on the 14th day of December, 1881, and requested so to do, the appellant refused to transfer said sum of money to the common school fund; and that no officer had ever taken any steps whatever to have such money transferred from the county revenue fund of Tippecanoe county to the common school fund. It was further averred that the moneys aforesaid had been used by the appellant for county purposes for the last ten years; and that the appellant, having received the benefit of such moneys for county purposes, and having failed to turn the same over to the common school fund, was chargeable with, and should be compelled to pay, interest thereon to the amount of $500; and that the principal sum, and such interest, were then due the common school fund and school revenue for tuition, and unpaid. Wherefore, etc.

A number of errors are assigned by the appellant, but we

need not set them out nor notice them further now than to say that they seem to us to properly present the " two questions" which, appellant's counsel says, "are by this appeal presented for the decision of this court." These two questions are as follows:

1. " Do the unclaimed moneys arising from the sales of estrays belong to the county or to the common school fund of the State?

2. " If the foregoing question be decided against the appellant, is the Attorney General the proper party to wage this suit?"

In section 2 of article 8 of the State Constitution of 1851 (section 183, R. S. 1881), it is declared that the common school fund shall consist of certain named funds, and of the funds to be derived from the sales of certain described real property. We need not copy this section of the fundamental law in this opinion, but it will suffice to say that the fund to be derived from the sales of estrays and property adrift is not thereby made a constituent part of the common school fund. It must be noted, however, in this connection, that while section 3 of article 8 of the State Constitution (section 184, R. S. 1881) positively inhibits the diminution of the common school fund, and declares that it "shall remain a perpetual fund," it expressly provides that such fund "may be increased."

Prior to the adoption of the State Constitution of 1851, to wit, on January 15th, 1844, an act of the Legislature was approved, entitled "An act converting the moneys arising from the sale of estrays and property taken up adrift into the common school fund." Section 1 of this act, omitting the enacting clause, provided as follows: " That all moneys arising from the sale of estray animals and property taken up adrift, so soon as the same shall have vested absolutely in any county, shall be, by the proper officers, transferred to the common school fund of the county, and shall be ratably apportioned amongst the several school districts thereof."

Section 2 of the same act provided, that it should be "in force from and after its passage." Acts 1844, p. 86.

We do not find that this act has ever been expressly repealed in or by any later act. In the *first* clause of the schedule annexed to the Constitution of 1851, " That no inconvenience may arise from the change in the government," it is ordained as follows:

" *First.* All laws now in force, and not inconsistent with this Constitution, shall remain in force until they shall expire or be repealed."

As the aforesaid act of January 15th, 1844, was not inconsistent with any of the provisions of the State Constitution of 1851, it is clear that it has remained in force and is still the law, unless it can be said that it has been repealed, either expressly or by implication, in or by some later enactment of the General Assembly of this State. At the first session of the General Assembly after the adoption of the Constitution of 1851, an act was passed and approved June 14th, 1852, to provide for a general and uniform system of common schools. In section 2 of this act, it was provided that " the county common school fund, and all funds heretofore appropriated to common schools," among other named funds, " shall be denominated the common school fund." 1 R. S. 1852, p. 439. On March 5th, 1855, a new law was enacted in relation to common schools, in section 2 of which act it was provided that " all funds heretofore appropriated to common schools," and other designated funds, " shall be denominated the common school fund." Acts 1855, p. 161; 1 G. & H., p. 543. A new law was approved on March 11th, 1861, in relation to common schools, and, in section 2 of that law it was again provided that " all funds heretofore appropriated to common schools," and other named funds, " shall be denominated the common school fund." Acts 1861, Reg. Sess., p. 68. So, also, in section 2 of the act of March 6th, 1865, in relation to common schools, which section is still in force as section 4325, R. S. 1881, it is pro-

vided that "all funds heretofore appropriated to common schools," and other designated funds, "shall be denominated the common school fund." Acts 1865, p. 2; 1 R. S. 1876, p. 779.

If there were no other legislation bearing upon the subject under consideration, except what we have heretofore quoted, it would seem to be reasonably clear that the unclaimed moneys arising from the sales of estrays belonged to the common school fund of the State, and not to the county. We have said that we have been unable to find any express repeal of the act of January 15th, 1844, above quoted. It is clear that the act in question was continued in force by the Constitution of 1851. As the act would never "expire," and as it has never been expressly repealed, the only remaining enquiry is, has it been repealed by implication?

The General Assembly of this State, at its first session after the adoption of the Constitution of 1851, passed an act, approved June 16th, 1852, entitled, "An act regarding estrays and articles adrift." It will be observed that this act was approved two days after the approval of the common school act of June 14th, 1852, and is to be regarded, therefore, if there be any conflict between the two acts, as the later expression of the legislative will. In section 11 of the act regarding estrays, etc., being section 4814, R. S. 1881, it is provided as follows:

"All sums paid to the county treasurer under the provisions of this act shall be, by him, entered to the credit of the county, under the head of estray fund."

This section is a re-enactment, almost *verbatim*, of section 14, chapter 21, of part 1 of the Revised Statutes of 1843, p. 372.

We are of opinion that it can not be correctly said that the provisions of section 4814, above quoted, repeal by necessary implication the act of January 15th, 1844, heretofore set out in this opinion. It will be observed that section 4814 does not authorize the appropriation of the sums of money arising from the sale of estrays and of property taken up adrift to the

county fund or to any of the purposes of the county. It simply requires, as did the estray law of 1843, that the county treasurer shall credit the county in a separate account, under the head of estray fund, with all sums received by such treasurer from the sales of estrays and of property taken up adrift. But the estray statute of June 16th, 1852, does not provide, nor does any act since passed provide in express terms, what shall be done by the county or by any county officer with such "estray fund," after it had "vested absolutely" in the proper county. There is no necessary conflict between the provisions of the act of January 15th, 1844, authorizing and directing the transfer of the "estray fund" to the common school fund, and any subsequent legislation on the subject of the estray fund, and, therefore, there has been no repeal by implication of the above entitled act of January 15th, 1844. This latter act is a continuing authority and direction for the transfer of the estray fund, "so soon as the same shall have vested absolutely in any county," to the common school fund of the county; and this latter fund is made a component part of the common school fund of the State, as we have seen, in every act passed since the adoption of the Constitution of 1851 providing for our system of common schools.

We conclude, therefore, that the estray fund in controversy, in the case at bar, belongs to the common school fund of the State, and not to Tippecanoe county.

From this conclusion it follows necessarily that, under the provisions of section 5668, R. S. 1881, the Attorney General is the proper relator to wage this suit on behalf of the State. *State, ex rel.,* v. *Denny,* 67 Ind. 148.

We have found no error in the record of this cause.

The judgment is affirmed with costs.

Filed Dec. 19, 1883.