No. 15,320.

THE BOARD OF COMMISSIONERS OF HAMILTON COUNTY *v.* THE STATE, EX REL. MICHENER, ATTORNEY GENERAL.

SCHOOL FUND MORTGAGE.—*Payment of Interest by County.—Reimbursement of.—Foreclosure.—What School Fund is Entitled to.*—Where money is loaned out of the congressional school fund, and the mortgagor fails to pay the interest for a number of years, and during those years the county pays it out of its general fund, and afterwards the mortgage is foreclosed and the land is bid in by the auditor of the county on account of said school fund, and subsequently the land is sold and conveyed to a third party, the school fund is only entitled to the principal

of said loan and the interest thereon until after the county treasury is reimbursed because of the interest it has paid to the said fund on account of said loan.

SAME.—*Duty of County as to Payment of Interest.*—*Sections 4393 and 4394, R. S. 1881, Construed.*—The school fund is entrusted to the county, and it is charged with the amount which it receives; if loss occurs the county has to make that loss good; and if the borrower, to whom the fund is loaned, fails to pay the interest as it annually falls due, the county is bound to pay it; and if the money is not loaned the county is chargeable with the interest thereon, and must pay it. When this is done, the obligation of the county has been fully met. It never was the intention of the framers of the Constitution that the school fund should be enhanced at the expense of the county, but simply that the fund should be preserved intact, and the interest annually paid. The provision in section 4394, R. S. 1881, in reference to the demands for which the mortgaged land shall be sold to satisfy, applies also to the preceding section.

From the Hamilton Circuit Court.

*W. S. Christian,* for appellant.

*L. T. Michener,* Attorney General, and *J. H. Gillett,* for the State.

BERKSHIRE, J.—The facts involved in this case may be summarized briefly as follows:

The auditor of Hamilton county loaned to one Amos J. Pettijohn out of the congressional school fund, town. 19, range 3, $1,000, and to secure the loan a mortgage was executed to the State of Indiana, as required by law, upon certain real estate situated in said county. The said auditor also loaned out of the same fund to one David Stewart $1,000, and a mortgage was executed to secure the same on lands situated in said county. For some years the mortgagors failed to pay the interest, and during those years it was paid by the county out of its general fund. Finally foreclosure proceedings were instituted in the Hamilton Circuit Court, and judgments rendered for the amounts due, including the interest that had been paid by the said county, and decrees entered for the sale of the mortgaged lands.

Afterwards the said tracts of land were offered for sale by the sheriff of Hamilton county, and no one bidding for either

tract the amount of the judgment for the satisfaction of which the court had decreed its sale, the same was bid in by the said auditor on account of the fund.

Afterwards the tract that had been mortgaged by Pettijohn was sold and conveyed for the sum of $1,400, and the tract mortgaged by Stewart sold and conveyed for the sum of $1,500. And the county, having continued to pay the interest each year, covered into the fund from which the loans had been made the sum of $2,000, that being the principal of said two loans, and all that was due to the said fund, unless, under the circumstances, it was entitled to something more than the principal and the interest thereon.

But the contention of the appellee is that the whole amount for which said real estate was sold belongs to said fund, notwithstanding the payment of the interest from year to year by the said county out of its general fund; while upon the other hand the appellant contends that the said fund is only entitled to the principal and the interest thereon until after its treasury is reimbursed, because of the interest it has paid to the said fund on account of said loans.

Article 8, section 3, of the State Constitution, reads: "The principal of the common school fund shall remain a perpetual fund, which may be increased, but shall never be diminished; and the income thereof shall be inviolably appropriated to the support of common schools, and to no other purpose whatever." Section 184, R. S. 1881.

Section 6 of the same article reads thus: "The several counties shall be held liable for the preservation of so much of the said fund as may be entrusted to them, and for the payment of the annual interest thereon." Section 187, R. S. 1881.

Section 4326, R. S. 1881, reads as follows: "The several counties of this State shall be held liable for the preservation of so much of said fund as is entrusted or may have been entrusted to them, and for the payment of the annual interest thereon, at the rate established by law, the payment of

which interest shall be full and complete every year, and shall so appear in the auditor's report to the superintendent of public instruction ; and the said superintendent shall, at any time, when he discovers, from the report, or otherwise, that there is a deficit in the amount collected, for want of prompt collection, or otherwise, direct the attention of the board of county commissioners and the county auditor to the fact, and the said board of commissioners are hereby authorized and required to provide for such deficit in their respective counties."

Section 4383 reads as follows : " On failure to pay any instalment of interest, when the same becomes due, the principal sum shall forthwith become due and payable, and the auditor may proceed to collect the same by suit on the note, or by sale of the mortgaged premises. He may also, by suit, recover the possession of the mortgaged premises before sale thereof; and he shall, on the fourth Monday in March, annually, offer for sale all mortgaged lands on which payments of interest are due on the first day of January and unpaid on the day of sale."

Section 4392, so far as we need quote from it, is as follows : " At such sale, the auditor shall sell so much of the mortgaged premises to the highest bidder, for cash, as will pay the amount due for principal, interest, damages, and costs * *; if a tract of land so mortgaged, and liable to be sold to satisfy the mortgage, can not be divided without materially diminishing the value of such tract ; or if any inlot or outlot be indivisible, by reason of extensive buildings or other improvements thereon, the auditor may sell the whole thereof, and, after paying the amount due for principal, interest, damages, and costs out of the purchase-money, shall pay the balance, if any, to the mortgagor ; and if the auditor sell any part of a tract of land, outlot, or inlot for more than the amount of principal, interest, damages, and costs, the excess, if any, shall be paid to the mortgagor."

Section 4393 reads thus : " In case of no bid for the

amount due, the auditor shall bid in the same on account of the fund, and, as soon thereafter as may be, shall sell the same—having first caused it to be appraised by three disinterested freeholders of the neighborhood—on a credit of five years, with interest at seven per cent. per annum, being payable annually in advance ; but no such sale shall be for a less sum than the appraised value thereof."

Section 4394 reads thus : " Lands heretofore bought in on account of the fund, which have been appraised, shall be sold in like manner; and if, upon sale of any such land, a sum is realized which is more than sufficient to pay the principal, interest, damages, and costs, the overplus shall be paid to the original mortgagor, his heirs or assigns, when collected."

Section 4390 reads as follows : " In all cases when the mortgaged premises shall fail to sell for a sum sufficient to satisfy the principal and interest of the loan made, and the damages accrued by reason of such failure, and costs, the county auditor shall bring suit on the notes executed by the mortgagor; and whenever judgment shall be rendered thereon, no appraisement of property shall be allowed on execution issued on such judgment.

Section 4398 reads thus : " County auditors and county treasurers shall annually report, in writing, to the boards of county commissioners of the respective counties, at the June sessions of said boards, relative to the school fund held in trust by said counties, distinguishing, in said reports, between the congressional township and common school funds; indicating the amount thereof ; the additions to them within the current year then ending ; the sources from whence such additions are derived ; the condition of them as to their safety, giving the amount thereof safely invested, unsafely invested and uninvested, and loss, at the date of said reports; giving also the amount of interest collected upon said funds within the year then ending, and the amount then due and unpaid."

Section 4399 reads as follows: " The boards of county commissioners shall, annually, at their June sessions, in the presence of the auditors and treasurers, examine said reports, the accounts, and proceedings of said officers in relation to said funds, and the revenue derived from them.   They shall compare with said reports, the cash, the notes, mortgages, records, and books of said officers, with a view to ascertain the amount of said funds and their safety; and do whatever may be necessary to secure their preservation and the prompt payment of the annual interest thereon as the same becomes due; and make up to said funds losses which have accrued or may accrue."

Section 4400 reads thus, so far as we need quote from it: " Each board of county commissioners, at said session, shall make out a report, in writing, of the result of such examination, showing:

"*First.*  The amounts of said funds at the close of the last year.

"*Second.*  The amount added from sale of land within the year.

"*Third.*  The number of acres of unsold congressional township school lands, and the approximate value thereof.

"*Fourteenth.*  The amount of interest collected within the year.

"*Fifteenth.*  The amount of interest delinquent."

Section 1269, Elliott's Supp., reads as follows: " That all lands which have become forfeited and have reverted, or may hereafter be forfeited and revert, to the various townships in the several counties of this State, for failure to pay the interest or principal of the amount due thereon to the school fund, and which have remained, or hereafter remain, unsold for the period of three years, by reason of the amount due thereon being in excess of the values of said lands, may be reappraised and sold for a sum not less than said reappraised value thereof, such reappraisement and sale to be made in the same manner and upon the same terms and con-

ditions as is now prescribed by law for the appraisement and sale of such lands."

Section 1270 reads as follows : "That, upon the sale of such lands, as provided for in the preceding section of this act, the board of county commissioners of the several counties in which said lands are situated may make an appropriation from the general county funds a sum equal to the difference between the amount for which said lands shall have been forfeited and the amount for which such lands shall have last sold, said sum appropriated to be placed to the credit of the proper fund, and loaned as other school funds are loaned."

We believe that the foregoing constitutional and statutory provisions are all of the provisions to which our attention has been called by counsel or discovered as the result of our own investigation, which can have, or are claimed to have, any controlling influence upon the questions involved in the record in this case. We are not called on to construe the provisions in sections 4392 and 4393, *supra*, in reference to the disposition to be made of the excess in cases where there is an excess after payment of principal, interest, damages and costs, for in the sales here involved there was no excess.

The constitutional provisions to which we have called attention will not allow a reduction of the common school fund, and to that end require the several counties of the State to preserve the fund so far as it is entrusted to them, and to annually pay the interest thereon ; and to carry out these constitutional provisions the legislation which we have had and now have relating to the management and preservation of the fund has been enacted.

The counties are in the strictest sense trustees of the fund, but, in addition, to all intents and purposes, stand as sureties for borrowers of the school fund.

All of the relations existing between debtor and creditor exist between the State and the several counties. The fund is entrusted to the county, and it is charged with the amount which it receives ; if loss occurs the county has to make that

loss good, and if the borrowers to whom the fund is loaned fail to pay the interest as it annually falls due, the county is bound to pay it, and if the money is not loaned the county is chargeable with the interest thereon, and must pay it.

If the relation of borrower and lender, or debtor and creditor, exists between the county and the State, as it evidently does, then, at least to the amount of money advanced by the county, where its officer has made a loan, and the mortgaged property sold and bought in on account of the fund, and afterwards sold and conveyed by the proper officer as the law requires, the fund should not be increased until the county is reimbursed.

When the principal and interest have been accounted for, the obligation of the county has been fully met, and the constitutional provisions above fully satisfied, and all legislation in aid thereof fully complied with.

It certainly never was the intention of the framers of the Constitution that the school fund should be enhanced at the expense of the county, but simply that the fund should be preserved intact, and the interest annually paid.

Section 4326, *supra,* requires *full and complete payment* of the interest, at the rate established by law, and that it be paid annually, and holds the counties liable for the principal of the fund entrusted to them as provided in the Constitution, but it requires nothing more.

When the interest becomes due, and is not paid by the borrower, section 4383 authorizes the auditor to proceed to collect it, together with the principal, and this he may do by suit on the note, or by sale of the mortgaged premises.

The county having paid the interest, as the law compelled it to do, the question arises, for whose benefit is the interest collected? Not for the benefit of the fund, unless it is entitled, where the borrower is delinquent, to collect interest twice: first from the county, and next from the borrower; and this will hardly be claimed.

The interest collected is for the benefit of the county, and

goes into its treasury, notwithstanding the action is prosecuted and the judgment obtained in the name of the State.

The county having paid the interest, there is nothing due to the fund on the interest account.

This same section provides for a strict foreclosure by the auditor of the county, and section 4392, *supra,* provides the manner of proceeding in making the sale, and that it shall be made to pay the principal and interest due on the loan, together with damages and costs.

It has been held frequently by this court that a sale made by the county auditor upon a school fund mortgage is absolutely void where the sale is made for more than is due. *Vail* v. *McKernan,* 21 Ind. 421 ; *Key* v. *Ostrander,* 29 Ind. 1 ; *Betson* v. *State, ex rel.,* 47 Ind. 54; *Brown* v. *Ogg,* 85 Ind. 234. If, therefore, the interest is not due to the county when the county has paid the same to the fund it is not due at all, and a summary sale by the county auditor for anything more than the principal, damages and costs would be void.

Sections 4393 and 4394 each provide for the sale of real estate that has been bid in on account of the fund ; section 4393 for sales made after the passage of the act containing said sections, and section 4394 for sales made before. In section 4393 there is no provison as to the demands that the sale shall be made to satisfy, but the sale under either section is made to pay the same debt, claim or demand. Section 4394 provides that the sum to be realized is to pay principal, interest, damages and costs.

No good reason, we think, can be shown for a different intention by the Legislature as to sales referred to in section 4393. We can not imagine why property bought in by the county auditor before the said statute should be sold for one purpose and that bought in afterwards for another. Our conclusion is, therefore, that the said provision in section 4394 should be held to apply to section 4393, and in this particular the two sections should be construed as one. Again, it may be said that in all the provisions relating to a

sale of the mortgaged lands, or to an action on the note, the purpose as stated is, to obtain payment of the principal and interest of the money loaned, and damages and costs arising out of the transaction.

It is true that section 4393 provides that the real estate shall be bought in on account of the fund, but the title is held by the State in trust for the fund, as is the case when a judgment is obtained by proceedings in court upon the note; but when the land is sold by the auditor it is for the purpose of paying the amount due, and to whomsoever it is due.

There is no provision in the statute which entitles the fund to anything more than the sum borrowed, with the interest which the county has not paid, at least until after the county is reimbursed, and then it becomes a question with the mortgagee and the State as to who is to have the excess, where there is an excess.

As an indication that it was not the intention of the Legislature that the fund should have anything more than its principal and interest, we call attention to the provisions in sections 4392 and 4394, that the excess, if any, after paying the principal and interest, damages and costs, shall be paid to the mortgagor.

It is true, the sales under consideration were sales by the sheriff, but the statute recognizes judicial proceedings, and when the land is bought in on account of the fund, at such a sale, we think it is held subject to the same conditions as if bought in at a strict foreclosure sale by the auditor.

Section 4400, *supra*, relates to lands held by the congressional township for the benefit of the school fund, and sales thereof.

Section 1269, Elliott's Supp., takes the place of section 4347, and relates to sales of congressional township lands; and so does section 1270, and can have no controlling influence in the determination of the questions here involved.

We have examined the opinion in the case of *Board* v. *State, ex rel.*, 120 Ind. 442. In that case it is simply decided that the counties are liable to the school fund for interest on the price for which school lands in the county were sold at public sale. With the reasoning and conclusion in that case we are still satisfied.

The mathematical illustration given in the appellee's brief rests upon the act of 1883, which, as we have said, does not apply to loans made from the school fund.

*Board etc.*, v. *State, ex rel.*, 116 Ind. 329, we do not regard as at all in point in this case. In that case a judgment was recovered against a trustee on account of rents and profits received of the sixteenth section of a congressional township.

The proceeds of the sale of the real estate itself, when sold became, and were, a part of the school fund; until sold, the rents and profits arising therefrom belonged to the fund.

In the case under consideration there has been no diminution of the fund; the money which is sought to be recovered was never any part of the fund.

Judgment reversed, with costs, with direction to overrule the demurrers to appellant's paragraphs of answer.

Filed Feb. 27, 1890.