PFAU, TREASURER OF BOARD OF SCHOOL TRUSTEES, *v.* STATE, EX REL. KETCHAM, ATTORNEY-GENERAL.

[No. 18,051. Filed October 15, 1897.]

MANDAMUS.—*Alternative Writ.—Sufficiency.—Statute Construed.*—An alternative writ of mandate, under section 5968, Burns' R. S. 1894, requiring the return to the State of unexpended school tuition revenue, which sets out the unexpended balance in excess of $100.00 apportioned by the State to such school corporation, and alleges that such balance remains in the hands of the treasurer thereof, and that such treasurer refuses to refund same to the county treasurer, although often requested to do so, is sufficient. *p. 542.*

APPEAL AND ERROR.—*Motion to Strike Out Part of Pleading.—Practice*—Error cannot be predicated upon the action of the court in overruling a motion to strike out a part of the pleading. *pp. 542, 543.*

SAME.—*Special Findings.—Judgment.—Assignment of Error.*—Where the judgment of the court conforms to its conclusions of law, and

there is no assignment of error as to the conclusions of law, no question can arise in this court as to motions for judgment by either party thereto on the findings.  *p. 543.*

SAME.—*Special Findings.—Assignment of Error.*—Assignments that certain findings are not supported by the evidence, to be available on appeal must be considered only as reasons for a new trial.  *p. 543.*

SCHOOLS.—*Unexpended Balance of Tuition Fund.—Order of Payment. —Mandamus.—Statutes Construed.*—Under the provision of section 5750, Burns' R. S. 1894, all tuition funds in the hands of a township trustee or school treasurer are, in effect, but one fund, and by the provision of section 5956, Burns' R. S. 1894, are to be applied and expended in the same manner; and it cannot be held, in a mandamus proceeding, under section 5968, Burns' R. S. 1894, to compel the treasurer of a school corporation to pay over to the county treasurer an unexpended balance of school tuition revenue in excess of $100.00, apportioned to such school corporation by the State, that the treasurer first paid out to his teachers the funds received from the State, and then those derived from local sources.  *pp. 543–546.*

From the Clark Circuit Court.  *Affirmed.*

*Jonas G. Howard* and *James K. Marsh,* for  appellant.

*W. A. Ketcham,* Attorney-General, *M. Z. Stannard* and *Leon O. Bailey,* for appellee. ·

HOWARD, J.—By an act approved March 3, 1893 (Acts 1893, p. 195), section 5968, Burns' R. S. 1894, the legislature amended section 114 of the school law (section 4482, R. S. 1881), which section provides for the apportionment by the Superintendent of Public Instruction of the tuition revenue of the State. The proviso in the amended section reads as follows:

"That any school corporation not expending the sum total of the tuition revenue apportioned to it by the state, shall, on the first Monday in July annually, report to and return to the county treasurer of the county in which said school corporation is situated, the unexpended balance of tuition revenue from said source in excess of $100.00, and the county auditor of said county shall include all such unexpended balances

in his report to the State Superintendent of Public Instruction, as tuition revenue collected in his county and ready for distribution at the next apportionment. Any township school trustee or treasurer of the board of school trustees of incorporated towns and cities refusing or neglecting to refund the said unexpended balance of tuition revenue as herein provided, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than double the amount so withheld."

The proviso so enacted was fully considered by this court in *State* v. *McClelland,* 138 Ind. 395, and was there upheld in all respects as a valid act. That case was not essentially different from the one now before the court, and must, as we think, control our decision here.

From the alternative writ, and from the finding of facts by the court, it appears, that the whole amount of tuition revenue received by appellant as treasurer of the board of school trustees of the city of Jeffersonville, to be used for the payment of teachers' salaries for the year preceding the first Monday of July, 1893, was $19,492.70, of which amount, $14,344.30 was received from the State, and the remainder from local sources. The amount of tuition revenue left in appellant's hands on the first Monday of July, 1893, after payment of all teachers' salaries for the previous year, was $15,633.76, or 80.20315 per cent. of the whole amount received. As the sum left in the hands of the treasurer was 80.20315 per cent. of the whole amount received by him, the appellee claimed that, under the statute, the same percentage of that part received from the State, making $11,504.58, should, as "unexpended balance of tuition revenue from said source," be returned to the county treasurer for redistribution by the Superintendent of Public Instruction. This

claim was allowed by the court, and judgment entered accordingly.

Numerous errors are assigned on the appeal, many of them, however, of a rather technical character.

By the assignments numbered 1, 2, 3, 4, 7, and 8 the sufficiency of the alternative writ of mandate is questioned. The writ sets out the unexpended balance of tuition revenue in excess of $100.00, apportioned by the State to the school corporation of the city of Jeffersonville for the year preceding the first Monday of July, 1893, and alleges that said balance remained in the hands of appellant as treasurer of the board of school trustees of said city; that, though required by law to pay the same over to the treasurer of Clark county, and often requested to do so, he refused and neglected, and still refuses and neglects to refund to said county treasurer the said balance in his hands. The writ was sufficient, as we think. It is substantially the same as that approved in *State* v. *McClelland, supra.*

The fifth assignment of error is, that the court overruled the motion to make the alternative writ more specific. Counsel do not argue this question, except to say that the facts constituting the commingling by the treasurer of the tuition revenues in his hands should be stated. To commingle is to put together in one mass, and the brief remark of counsel does not inform us why the statement made in the writ is not sufficient to show that the tuition funds in the hands of the treasurer were so blended as to be indistinguishable, and to constitute, in fact, but one fund. The argument made is not sufficient to disclose any error in overruling the motion to make more specific. *Allen* v. *Northwestern Mutual Life Ins. Co.*, 136 Ind. 608.

By the sixth assignment of error, the correctness of the court's action in overruling the motion to strike

out parts of the alternative writ is called in question. Without considering the merits of the question so raised, it is enough to say, that it does not appear that appellant was harmed by the ruling. In *City of Crawfordsville* v. *Brundage*, 57 Ind. 262, it was said: "This court has repeatedly held, that the overruling, by the court below, of a motion to strike out a part of a pleading, is not, on appeal, an available error here. The reason assigned for such decision is, that 'At most, it can but leave surplusage in the record, which does not vitiate that which is good.'"

Under assignments 10 and 11, complaint is made that the court erred in refusing to render judgment upon the findings in favor of appellant, and in rendering judgment thereon in favor of appellee. These assignments also are unavailing. The judgment of the court conforms to its conclusions of law; and as there is no assignment that the court erred in its conclusions of law, no question can arise as to rulings made on motions for judgment by either party. The conclusions of law upon the facts found being taken as correct, the judgment following in accordance with such conclusions must likewise be taken as correct. Section 560, Burns' R. S. 1894 (551, R. S. 1881); *Nading* v. *Elliott*, 137 Ind. 261.

Assignments 12, 13, 14, and 15, that certain findings are not supported by the evidence, to be available at all, must be considered only as reasons for a new trial. *Nading* v. *Elliott, supra; Lewis* v. *State*, 142 Ind. 30.

There remains only the assignment that the court erred in overruling the motion for a new trial. Under this head, counsel for appellant argue very earnestly that the evidence does not support the findings of the court. This contention is based upon the circumstance that the total tuition revenue received for use

during the year in question was but little in excess of the amount expended for teachers' salaries in that year, and that it is shown that large balances from previous years were also in the hands of the treasurer during that year. Counsel say that those balances from previous years were from local sources, and should not, therefore, be turned over to the State; that the State fund should·be considered as first used in payment of teachers' salaries, and all balances as left from local funds only; that the balances, therefore. accumulated in the hands of the treasurer from year to year, no matter how large, or whether at all needed, must be·retained in the hands of the treasurer; for what purpose it is not stated.

To this it may be answered, that while no local levies should have been made that were not needed to supplement the State fund apportioned for the city schools, yet when the funds were actually raised, no matter from what sources, and whether from the State or from the school city itself, as soon as they were placed in the hands of the treasurer they became one fund, to be used only for the payment of teachers. All tuition.funds, except only "local tax for tuition," are named in section 5750, Burns' R. S. 1894 (4325, R. S. 1881), as constituting one fund, there denominated "school revenue for tuition." And, by section 5956, Burns' R. S. 1894 (4470, R. S. 1881), the local tuition fund itself is declared to be "under the charge and control of the same officers, secured by the same guaranties, subject to the same rules and regulations and applied and expended in the same manner as funds arising from taxation for common school purposes by the laws of the state." The only limitation prescribed is, that the local tuition fund shall be applied and expended in the locality where it has been collected. All tuition funds are then, in effect, but

one fund in the hands of the township trustee or school treasurer, to be used as such by him in paying the teachers of his locality. There is no priority of use of one part of the common fund, but all, in the words of the statute, are to be "applied and expended in the same manner." There is therefore no warrant for saying that the treasurer first paid out to his teachers the funds received from the State, and then those derived from local sources. The funds were mingled, and from each was paid out, in each instance, its proportional part. It follows, as said in *State* v. *McClelland, supra,* that the method pursued in determining the proportion of the unexpended State fund to be returned "is the only correct one which could be adopted." All the funds were used in common, and the part of each fund which remains unexpended must bear the same relation to the original amount of such fund as the whole sum unexpended bears to the whole sum first received. The heavy balances from previous years, of which counsel make so much in argument, were themselves made up, in like proportion, of the several funds which had come into the hands of the treasurer. By the rule of proportion adopted, the school city was allowed to retain the full amount of every fund which could in any sense be considered as local, whether derived from congressional, liquor license, or local tuition sources.

The statute under which this action was brought was intended to do away with evils that had grown up in the levy, apportionment and expenditure of the tuition revenue of the State. Counsel for appellant, perhaps unwittingly, allude to one of those evils, saying: "The State school tuition revenue is a permanent and primary fund created for the education of all the children of the State, while the local fund is supple-

mental in its character, and is only authorized to be levied and collected by the officers of said school corporation when it shall appear that the State school revenue apportioned by the State to said school corporation for any certain year will be insufficient to continue said school during said year for the desired length of time." Yet it is a matter of general knowledge that school officers in many cases did make local levies even when it was apparent that such levies were not needed, and when the balance on hand together with the amount to be apportioned by the State would be more than sufficient to continue the schools for the desired length of time. Large balances were thus, from year to year, needlessly accumlated in the hands of school officials. The evil, besides, was an unmixed one. The money exacted from the people, while of no value to the children, because not needed for the support of the schools in the locality, was in addition a source of temptation in the hands of those holding it. Other abuses growing out of the old practices are referred to in *State* v. *McClelland, supra.* The statute is not only valid, as there held, but is one that tends, justly and fairly, to distribute idle school funds so that they may, in the largest degree possible, aid in bringing about that condition of our schools which was sought by the framers of the constitution, "Wherein tuition shall be without charge, and equally open to all."

Judgment affirmed.